Lynee C. TAYLOR, et al., Plaintiffs,

v.

COMMONWEALTH OF VIRGINIA,
Department of Transportation,
Defendants.

Civil Action No. 3:95cv1026.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 18, 1996.

James B. Thorsen, Julie M. Whitlock, Hooker, Bode, Collier & Dickinson, Richmond, VA, for Plaintiffs.

Judith B. Anderson, George W. Chabalewski, Mark R. Davis, Catherine S. Gabauer, Office of the Attorney General, Richmond, VA, for Defendant.

PAYNE, District Judge.

## MEMORANDUM OPINION

At issue here is whether the Commonwealth of Virginia's constitutionally secured sovereign immunity bars plaintiffs from bringing their Fair Labor Standards Act claim in federal court. Deciding that issue in the affirmative, the court finds that Congress did not have authority, under the Commerce Clause, to abrogate the sovereign immunity conferred under the Eleventh Amendment and that the Commonwealth of Virginia did not waive its immunity.

## PROCEDURAL BACKGROUND

Plaintiffs are transportation construction inspectors and employees of the Virginia Department of Transportation ("VDOT"). On December 22, 1995, they filed a complaint against the Commonwealth of Virginia and VDOT seeking recompense for hours worked

in excess of those specified in the Fair Labor Standards Act, 29 U.S.C. § 207(a) ("FLSA"). Specifically, plaintiffs seek overtime compensation at a rate of one and one-half times their regular rate of pay for the hours of overtime they worked travelling to and from remote construction sites in vehicles provided by the Commonwealth. They also seek liquidated damages, injunctive relief, attorneys' fees and costs pursuant to the FLSA.

On February 5, 1996, pursuant to 29 U.S.C. § 216(b), notice of this action was sent to all similarly situated VDOT employees who were afforded an opportunity to join the action if they did so before March 22, 1996. On February 13, 1996 and on April 11, 1996, by order of the court, the *Taylor* action was consolidated with two similar cases, *Kennedy v. Commonwealth of Virginia, Department of Transportation,* Civil Action No. 3:96cv72, and *Boswell v. Commonwealth of Virginia, Department of Transportation,* Civil Action No. 3:96cv300. Three hundred and fifty two (352) inspectors ultimately elected to join as plaintiffs against the defendants.

On February 15, 1996, the court, relying in part on *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), denied the defendants' Motion to Dismiss the action over the Commonwealth's assertion of Eleventh Amendment sovereign immunity. On March 27, 1996, the Supreme Court decided *Seminole Tribe of Florida v. Florida,* — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole,* the Court held that the Indian Commerce Clause does not grant Congress authority to abrogate the States' Eleventh Amendment sovereign immunity. In so holding, the Court overruled *Union Gas,* on which this court had relied in holding that Congress could, as it did under the FLSA, abrogate the States' sovereign immunity under the Commerce Clause. On April 5, 1996, the defendants filed a motion asking for reconsideration of their motion to dismiss on the ground that this court's decision should be controlled by *Seminole.* This motion for reconsideration is presently before the court and for the following reasons, the court grants defendant's motion to dismiss.

## ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

The analysis begins with the text of the Eleventh Amendment which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const.Amend.XI. The proscriptions of the Eleventh Amendment have long been interpreted to prevent citizens from bringing suit against their own State in federal court, notwithstanding that the literal terms of the Amendment do not so provide. *Atascadero v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

Recently, the Supreme Court explained that: "'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms' . . . first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Florida v. Florida,* — U.S. —, —, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (citations omitted).

State sovereign immunity is not absolute, however. Congress, pursuant to authority bestowed upon it by the constitution, can abrogate sovereign immunity. For example, in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976), the Supreme Court held that the:

> Eleventh Amendment and the principle of state sovereignty which it embodies . . . are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. * * * Congress may in determining 'appropriate legislation' for the purpose of enforcing the Fourteenth Amendment provide for private suits against states, which would be constitutionally impermissible in other contexts.

*Fitzpatrick,* 427 U.S. at 456, 96 S.Ct. at 2671. (citations omitted).

Alternatively, a state may waive its protection under the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, waiver will only be found "where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Id.* at 673, 94 S.Ct. at 1360 (inner quotations omitted).

## A. Abrogation

■ The first question presented here is whether Congress abrogated the States' sovereign immunity in enacting the FLSA or in the amendments which extended the application of the FLSA to State employees. The resolution of any issue involving abrogation of sovereign immunity turns on a two part inquiry: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' . . . and second, whether Congress has acted 'pursuant to a valid exercise of power.' " *Seminole,* —— U.S. at ——, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)).

### i. Congress Intended to Abrogate Eleventh Amendment Immunity in the FLSA

■ "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero,* 473 U.S. at 242, 105 S.Ct. at 3147. "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically." *Atascadero,* 473 U.S. at 246, 105 S.Ct. at 3149 (citations omitted); *see also Seminole,* —— U.S. at ——, 116 S.Ct. at 1123.

We have in this case such an unmistakably clear statement of Congressional intent to abrogate the States' sovereign immunity. The FLSA provides that "[a]n action to recover the liability prescribed . . . may be maintained against any employer *(including a public agency)* in any *Federal or State court* of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added).[1]

The FLSA also clearly contemplates that, within its meaning, states are employers and that state workers are employees. Under the FLSA, "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and *includes a public agency . . .*" 29 U.S.C. § 203(d) (emphasis added). "Public agency" includes "the government of a State or political subdivision thereof, any agency of . . . a State, or a political subdivision of a State." 29 U.S.C. § 203(x). And, with respect to individuals employed by a public agency, "employee means any individual employed by a State, political subdivision of a State or an interstate governmental agency . . ." other than specified exceptions. 29 U.S.C. § 203(e)(2)(C). These "numerous references to the 'State' in the text of the FLSA make it indubitable that Congress intended through the Act to abrogate the States' sovereign immunity from suit." *See Seminole,* —— U.S. at ——, 116 S.Ct. at 1124 (Indian Gaming Regulatory Act). This conclusion accords with the decisions of numerous courts. *See e.g. Brinkman v. Kansas,* 21 F.3d 370, 371–72 (10th Cir.1994) ("Congress made clear in the FLSA its intention to override the Eleventh Amendment") (noting agreement with *Reich v. New York,* 3 F.3d 581, 590 (2d Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994));

---

1. In 1974, Congress amended the FLSA, extending the Act to various employees, including state and local government workers. The 1974 amendments came in the wake of *Employees of the Department of Public Health & Welfare v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), a case in which the Supreme Court held that section (16)(b) of the FLSA did not evidence Con-

gressional intent to subject states to suit in federal court. The 1974 amendments changed section 16(b) to its current language, clarifying: (i) that public agencies were employers within the meaning of the FLSA; and (ii) that courts of competent jurisdiction meant federal or state courts. *See* 29 U.S.C. § 216(b); *Raper v. Iowa,* 940 F.Supp. 1421, 1426 (S.D.Ia.1996); *Goebel v. Colorado,* 93–K–1227 at 4 (D.Co. June 25, 1996).

*Hale v. Arizona,* 993 F.2d 1387, 1392 (9th Cir.1992) (*en banc*) ("The specific inclusion of 'public agenc[ies]' and the addition of 'any Federal or State court' [to § 16(b) ] make the intent of Congress to render states amenable to suit under the FLSA in federal court unmistakably clear."); *Karr v. Augusta Correctional Center,* 1994 WL 704966 (W.D.Va.) ("under the FLSA, public employers, including states, may be sued in the federal courts"); *American Federation of State, County and Municipal Employees, AFL–CIO v. Commonwealth of Virginia,* Civ. No. 94–097A, 1995 WL 913191 (W.D.Va. July 10, 1995).

### ii. Power to Abrogate

█ Having determined that in enacting the amendments to the FLSA, Congress clearly intended to abrogate the States' Eleventh Amendment immunity, it is now necessary to examine whether the FLSA was passed "pursuant to a constitutional provision granting Congress the power to abrogate." *Seminole,* —— U.S. at ——, 116 S.Ct. at 1125. The court concludes that Congress did not have such power because the FLSA was both enacted and amended to be applicable to the States pursuant to Congress' Commerce Clause powers and, under *Seminole,* Congress has no authority under the Commerce Clause to abrogate sovereign immunity.

### a. Congress Does Not Have the Power to Abrogate Sovereign Immunity Under the Commerce Clause

Congress expressly invoked the Commerce Clause as the source of its authority to enact the FLSA. Indeed, the statement of policy and findings which preface the FLSA clearly state:

> It is declared to be the policy of this chapter, *through the exercise by Congress of its power to regulate commerce* among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202(b) (emphasis added).

In addition, every Supreme Court decision examining the constitutional limits to the reach of the FLSA has considered the FLSA a Commerce Clause enactment. *See United States v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1940) (upholding minimum wage and maximum hour standards as exercise of Congress' Commerce Clause powers); *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) (upholding Congress' authority under Commerce Clause to extend FLSA to public schools and hospitals); *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (overruling *Wirtz* and holding that Congress does not have authority under the Commerce Clause to extend the FLSA minimum wage and maximum hour provisions to state employees which would operate "to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions."); and *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 557, 105 S.Ct. 1005, 1021, 83 L.Ed.2d 1016 (1985) (overruling *National League of Cities* as "departing from a proper understanding of congressional power under the Commerce Clause.").

Thus, assuming, without deciding for the moment, that Congress acted only under the Commerce Clause in extending the FLSA wage, hour and overtime provisions to state employees, this action must be dismissed because the text of *Seminole* necessary to the result reached in that case requires a finding that the Commerce Clause does not authorize Congress to abrogate the States' constitutionally secured sovereign immunity. *See Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996) ("Congress' power to regulate interstate commerce, which is part of Congress' Article I powers, is limited by the Eleventh Amendment."); *MacPherson v. University of Montevallo,* 938 F.Supp. 785 (N.D.Ala.1996) (ADEA) (finding that the Supreme Court in *Seminole* held that "Congress cannot abrogate the Eleventh Amendment immunity enjoyed by the states when enacting legislation pursuant to the Commerce Clause"); *Martz v. Arkansas State Police Department,* No. LR–C–94–450 at 3, 1996 WL 819805 (E.D.Ar. May 15, 1996) (FLSA) ("The Supreme Court in *Seminole* found that the Interstate Commerce Clause

does not authorize Congress to abrogate states' Eleventh Amendment immunity."); *Powell v. Florida*, 95–6233–civ–zloch at 7 (August 6, 1996) (FLSA) ("Applying *Seminole Tribe* to the instant case, ... Congress did not have authority under the Interstate Commerce Clause to abrogate [Florida's] immunity ... to suits under the FLSA"); *Raper v. Iowa*, 940 F.Supp. at 1424 (FLSA) (The Interstate Commerce Clause does not grant Congress with the authority to abrogate immunity.); *Goebel v. Colorado*, No. 93–K–1227; *Brace v. Colorado*, Civil Action No. 94–K–649; *American Federation of State, et. al v. Colorado*, 94–K–1066 at 9 (June 26, 1996 Magistrate's Recommendation) (FLSA) ("Plaintiffs concede, as they must after *Seminole Tribe*, that Congress may not abrogate a state's Eleventh Amendment immunity through exercise of power to regulate interstate commerce."); *Ross v. Middle Tennessee State University*, NO. 3–95–1203 (July 17, 1996) (FLSA) (Plaintiff does not dispute that *Seminole* permits defendant to raise sovereign immunity defense).

A brief review of the context in which *Seminole* was decided is useful at this point. As preface to its decision that the "Eleventh Amendment prevent[ed] Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause," the Supreme Court reviewed the only two decisions in which it had found Congressional power to abrogate Eleventh Amendment immunity. *Seminole*, —— U.S. at ——, 116 S.Ct. at 1122.

First, there was *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), wherein the Court had determined that Congress could abrogate the States' Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment. However, as the *Seminole* Court explained, *Fitzpatrick* was based upon the rationale that the Fourteenth Amendment permitted federal intrusion "upon the province of the Eleventh Amendment" because the Fourteenth Amendment was specifically designed

to alter "the balance of state and federal power struck by the Constitution." *Seminole*, —— U.S. at ——, 116 S.Ct. at 1125. Hence, *Fitzpatrick* provided no basis for abrogation under the Commerce Clause.[2]

The only other case, the *Seminole* Court explained, in which Congressional power to abrogate the States' Eleventh Amendment immunity had been upheld was *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In *Union Gas*, a plurality of the Court concluded that the " 'Interstate Commerce Clause, Art. I, § 8, cl. 3, granted Congress the power to abrogate state sovereign immunity, stating that the power to regulate interstate commerce would be incomplete without the authority to render States liable in damages.' " *Seminole*, —— U.S. at ——, 116 S.Ct. at 1125 (quoting *Union Gas*, 491 U.S. at 19–20, 109 S.Ct. at 2284). Clearly, *Union Gas* construed the Commerce Clause to permit federal abrogation of sovereign immunity.

In reliance upon *Union Gas*, the petitioners in *Seminole* urged that Congress had the power to abrogate the states' Eleventh Amendment immunity under the Indian Commerce Clause. The Supreme Court agreed that *Union Gas* permitted no "principled distinction in favor of the States to be drawn between the Indian Commerce Clause and the Interstate Commerce Clause." *Seminole*, —— U.S. at ——, 116 S.Ct. at 1126. However, the Court overruled *Union Gas* because it had "deviated sharply from our established federalism jurisprudence" namely, that "the Eleventh Amendment reflects 'the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Article III.' " *Seminole*, —— U.S. at ——–——, 116 S.Ct. at 1127–28 (quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 97–98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984)). In *Seminole*, the Court also found that the reliance in *Union Gas* on *Fitzpatrick* was misplaced because the rationale on which *Fitzpatrick* was based was "wholly inapplicable to the Interstate Commerce Clause." That analysis

---

**2.** Of course, it is arguable that the Commerce Clause is a grant of power to Congress which is intended to alter the balance of federal and state power every time that power is exercised. That view, however appealing, has no efficacy after *Seminole*.

springs from the fact that the Fourteenth Amendment was adopted after the Eleventh Amendment and was intended to alter the pre-existing state and federal balance, while the Commerce Clause pre-dated the Eleventh Amendment and was merely a part of the balance struck before the Eleventh Amendment was implemented. *Seminole,* —— U.S. at ——, 116 S.Ct. at 1128 (citing *Union Gas,* 491 U.S. at 42, 109 S.Ct. at 2302 (SCALIA, J., dissenting)). For these reasons, the *Seminole* Court found that the "Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole,* —— U.S. at —— – ——, 116 S.Ct. at 1131–32.

Applying the principles of *Seminole* to this action requires a finding that Congress cannot abrogate the States' Eleventh Amendment immunity under visage of the Commerce Clause, an Article I power. Consequently, if the 1974 amendments to the FLSA were enacted pursuant to the Commerce Clause, this action must be dismissed.

Plaintiffs have argued, however, that *Seminole* does not control here because Congress could have enacted the FLSA amendments pursuant to its powers under Section 5 of the Fourteenth Amendment. For the following reasons, that argument fails to pass muster.

**b. The Amendments to the FLSA Were Not Enacted Pursuant to Congress' Fourteenth Amendment Powers**

Plaintiffs urge that the 1974 amendments to the FLSA, making the statute applicable to state and local government employees, were enacted to enforce the Equal Protection Clause pursuant to Section 5 of the Fourteenth Amendment. Of course, if the plaintiffs are correct, the abrogation of immunity in section 16(a) of the FLSA is permissible under the principles announced in *Fitzpatrick v. Bitzer, supra.*

Plaintiffs frankly admit that the legislative history of the 1974 FLSA amendments does not articulate a specific Congressional intent to invoke the Fourteenth Amendment. They claim, however, that in legislating, Congress need not specifically refer to the constitution-al source of its power. The appropriate question, according to plaintiffs, is not whether Congress guessed the *correct* source of its power but whether Congress *could* have passed the FLSA amendments under Section 5 of the Fourteenth Amendment. *See Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir. 1996) ("In the particular context of enforcement clauses, an act is a valid exercise of the enforcement power if it is 'rationally related' to the amendment's subject matter.") (citing *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); *see also Usery v. Charleston County School District,* 558 F.2d 1169, 1171 (4th Cir.1977) ("... in passing on the constitutionality of legislation [the court must] determine whether Congress had the authority to adopt the legislation, not whether it correctly guess the source of that power."); *E.E.O.C. v. Elrod,* 674 F.2d 601, 604 (7th Cir.1982) ("The inquiry [in determining whether legislation is enacted pursuant to section 5 of the Fourteenth Amendment] is whether the objectives of the legislation are within Congress' power under the Amendment."). Indeed, it has been held that "the test for Section 5 legislation enacted to enforce the Equal Protection Clause [is] whether a statute '[1] may be regarded as an enactment to the Equal Protection Clause, [2] whether it is plainly adopted to that end and [3] whether it is not prohibited but is consistent with the letter and spirit of the Constitution.' " *Wilson–Jones, supra,* (quoting *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966)) (internal quotations omitted).

▮▮▮▮ Thus, plaintiffs correctly assert that "[t]he question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Miller,* 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948). On the other hand, there are limits to this principle. Indeed, as the Supreme Court has ruled:

It is in the nature of our review of congressional legislation defended on the basis of Congress's powers under § 5 of the Fourteenth Amendment that we be *able to discern some legislative purpose or factual predicate that supports the exercise of that power.* That does not mean, however, that

Congress need anywhere recite the words "section 5" or "Fourteenth Amendment" or "equal protection," *see e.g., Fullilove v. Klutznick,* 448 U.S. 448, 476–78 [100 S.Ct. 2758, 2773–75, 65 L.Ed.2d 902] (1980) (Burger, C.J.), for "[t]he constitutionality of action taken by Congress does not depend on recitals of the power under which it undertakes to exercise." *Woods v. Miller,* 333 U.S. 138, 144 [68 S.Ct. 421, 424, 92 L.Ed. 596] (1948).

*E.E.O.C. v. Wyoming,* 460 U.S. 226, 243–44 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983) (emphasis added). Moreover, "[i]f Congress does not explicitly identify the source of its power under the Fourteenth Amendment, there must be something about the Act connecting it to recognized Fourteenth Amendment aims." *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996).

Having searched the text of the FLSA and its legislative history, this court can discern no legislative purpose or factual predicate to support plaintiffs' assertion that, in extending the Act's wage and overtime provisions to state and local employees, Congress acted pursuant to Section 5 of the Fourteenth Amendment. Nor is there anything about the Act connecting it to Fourteenth Amendment aims. *See Raper, supra,* at 1426 ("There is no evidence ... [that] the FLSA or its amendments were enacted to further anti-discrimination or equal protection objectives"); *Wilson–Jones, supra* ("Examining the FLSA, there is no sufficiently strong logical connection between the aim of the statute—to increase the wages and shorten the hours of certain employees—and central, obvious Fourteenth Amendment concerns). To the contrary, the text and the legislative history clearly reflect that the amendments, like the FLSA itself, were animated by economic and commercial considerations which Congress may reach through its Commerce Clause powers.

Section 2 of the FLSA enacted in 1938 sets out the basic policy of the Act:

(a) The Congress finds that the *existence,* in industries engaged *in commerce* or in the production of goods for commerce, *of labor conditions* detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers

(1) *causes commerce* and the *channels and instrumentalities of commerce* to be used to spread and perpetuate such labor conditions among the workers of the several States;

(2) *burdens commerce* and the free flow of goods in commerce;

(3) constitutes an *unfair method* of competition in commerce;

(4) leads to *labor disputes burdening* and obstructing commerce and the free flow of goods in *commerce;* and

(5) *interferes* with the orderly and fair *marketing* of goods *in commerce.*

\*     \*.     \*     \*     \*     \*

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power. (emphasis added).

29 U.S.C. § 202.

The House Report accompanying P.L. 93–259, the Fair Labor Standards Amendment of 1974, makes clear reference to the basic policy of the FLSA as eliminating the burdens on commerce from the labor conditions that were detrimental to the maintenance of minimum standards of living. The Report further states that the 1974 amendments implement the policy of the FLSA by increasing the minimum wage rate and extending the benefits and protection of the Act.[3] *See* H.R.Rep. 93–913, Purpose of the Legislation. Throughout the Report, references may be found to economic concerns, including the

---

**3.** In addition to extending the minimum wage and overtime coverage to federal, state, and local employees, the 1974 Act also increased the minimum wage rates and extended coverage to numerous other professions including: domestic service employees, employees of retail and service establishments, and telegraph agency employees.

"economic urgency" that the amendments were intended to cover and the need to remedy the "economic plight of low wage workers." *See* H.R.Rep. 93–913, Committee Consideration section.

Thus, as was true in promulgating the FLSA, the improvement of labor conditions provided the impetus for the 1974 amendments, and the express object of Congress was to achieve this improvement in order to free interstate commerce, not to remedy disparate treatment. And as previously noted, virtually every Supreme Court case has evaluated the constitutionality of the FLSA (and the extension of the Act to state employees) as an exercise of power under the Commerce Clause. *See supra*, *United States v. Darby*, 312 U.S. 100, 115, 61 S.Ct. 451, 457, 85 L.Ed. 609 (1941); *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).[4]

In this regard, the 1974 amendments to the wage and overtime provisions of the FLSA may be differentiated from the amendments expanding the coverage of the Equal Pay Act and the Age Discrimination in Employment Act (ADEA), wherein a legislative purpose to invoke the Fourteenth Amendment have been found. *See Usery v. Charleston County School District*, 558 F.2d 1169, 1170 (4th Cir.1977) (Unlike the wage and overtime provisions of the FLSA, the Equal Pay Act "is an antidiscrimination measure; and as such, may be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantee of equal protection of the law.") (citations omitted); *see also*, *Goebel v. Colorado*, Civil Action No. 93–K–1227 (Recom-

mendation of United States Magistrate Judge Bruce D. Pringle, June 27, 1996) ("Unlike the wage and hour protections of the FLSA, both the ADEA and Equal Pay Act were intended to eliminate invidious class discrimination based on age and sex."); *Raper*, 940 F.Supp. at 1425 ("Overtime provisions of the FLSA cannot be equated with the anti-discrimination provisions of Title VII, the latter of which clearly relate to substantive guarantees of the Fourteenth Amendment") (citing *Fitzpatrick v. Bitzer*, 427 U.S. at 453, n. 9, 96 S.Ct. at 2670, n. 9). Brief of United States Department of Labor Regarding *Seminole Tribe of Florida v. Florida* at 6 (distinguishing amendments to Equal Pay Act from FLSA on the basis that the former were "an appropriate exercise of Congress' authority under section 5 of the Fourteenth Amendment").

Thus, the court finds no legislative purpose or factual predicate to support a finding that Congress acted pursuant to its Fourteenth Amendment powers in extending the FLSA to state employees. Neither Congress nor any court has found that a refusal to pay overtime wages violates a constitutional right. And this court agrees with the Sixth Circuit that, ("it best to regard as an enactment to enforce the Equal Protection Clause, in the absence of explicit comment by Congress, only efforts to remedy discrimination against a class of persons that Fourteenth Amendment jurisprudence has already identified as deserving special protection.") *See Wilson–Jones*, *supra*.

Plaintiffs attempt to avoid the clear legislative history of the FLSA amendments by reciting remarks by Congressional representatives that state workers should not be discriminated against because they work for the government.[5] But to find for plaintiffs in

---

4. Indeed, in *National League of Cities* the Supreme Court discussed the Fourteenth Amendment powers of Congress, stating only that it "expressed no view as to whether different results [would] obtain if Congress seeks to affect integral operations of state government by exercising authority granted to it under sections of the Constitution, such as the spending power, Art. I, § 8, Cl. 1, or § 5 of the Fourteenth Amendment."

5. *See e.g.* 119 Cong.Rec. 18, 145 (1973), *reprinted in* 1 Legislative History of the Fair Labor Standards Act of 1974 at p. 258 (1976) (The expansions of coverage to all Federal employees, to employees of State and local governments, etc. "are of course, long overdue. There are no reasons why these groups should not be brought under the protection of the act.") (Remarks Rep. Perkins). *See also*, *Id.* at 262–63 (*"Employees should not be subjected to discrimination because they happen to work for the government*

this instance would mean, in effect, that any time Congress extends a legislative Act to persons not previously covered, it operates pursuant to the Fourteenth Amendment. A rule of this breath would circumvent the Supreme Court's holding in *Seminole* and would invert the principle that our federal system requires respect for state sovereignty. *See Goebel, supra* at 13 ("A statutory amendment is not automatically deemed an exercise of Congress' power under the Equal Protection Clause simply because it expands the reach of previously enacted remedial legislation to states and their political subdivisions"); *Wilson–Jones, supra* (Rejecting plaintiff's argument that the desire to end the differential pay between state employees and the private sector, as an argument that "could support any Congressional action extending the scope of a law to cover a new class of people—thereby defeating the principle that Congress has but limited power.")

In conclusion, the court joins the numerous other courts which have rejected the assertion that Congress extended the FLSA to state and local government employees under the guise of the Equal Protection Clause of the Fourteenth Amendment. *See e.g. Wilson–Jones, supra. Goebel v. Colorado, supra; Raper,* 940 F.Supp. at 1424–26; *Powell v. Florida, supra,* at 4–5. The court similarly rejects plaintiffs' corollary argument that Congress had authority pursuant to Section 5 of the Fourteenth Amendment to provide state employees the right of equal access to the federal courts. *See Raper, supra,* at 1424–26 (finding no state action impeding plaintiffs' access to court by state's refusal to waive immunity).

**B. Waiver**

The final issue is plaintiffs' claim that, even if Congress has not abrogated the States' Eleventh Amendment immunity, the Commonwealth has waived its immunity both expressly and impliedly. In support of this argument, plaintiffs cite to Virginia statutes,

which provide that the Commonwealth will comply with federal laws. Plaintiffs also claim that, in accepting federal highway funds, Virginia agreed to comply with all applicable requirements of all federal laws, executive orders, regulations and policies governing such federal highway programs. According to plaintiffs, one of these federal laws is the Fair Labor Standards Act.

**i. Virginia Did not Expressly Waive Its Immunity**

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." [6] *Atascadero State Hospital v. Scanlon,* 473 U.S. at 241, 105 S.Ct. at 3146. As explained further by the Supreme Court:

Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam) ... 'a State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued.' *Pennhurst II,* 465 U.S. at 99, 104 S.Ct. at 907. Thus, *in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.*

*Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146 (emphasis added).

The plaintiffs argue that, by enacting Va. Code §§ 33.1–12(5) and 33.1–215, the General Assembly of Virginia expressed its assent to abide by all applicable federal laws when carrying out programs with federal highway funds; and, according to plaintiffs, that assent includes consent to the FLSA, including the provision which subjects violators of the

---

*rather than for a private sector employer.* Furthermore, the 40 hour week has long been the norm in the private sector and it is about time the public sector joined the rest of us in the 20th century.") (Remarks Rep. Jordan) (emphasis added).

6. Indeed, it has been said that the Supreme Court's "test" for finding express waivers of the Eleventh Amendment is "so stringent that it is quite unlikely that very many ... will be found." E. Chemerinsky, *Federal Jurisdiction,* 2d Edition, 407 (1994).

statute to suit in federal court. Section 33.1–12(5) of the Code of Virginia states:

> The *Commonwealth Transportation Board* shall be vested with the following powers and shall have the following duties: . . . (5) *Compliance with federal acts.—To comply fully* with the provisions of the present or future *federal aid acts.* The Board may *enter into all contracts or agreements* with the United States government and may do all other things necessary *to carry out fully the cooperation contemplated and provided for by present or future acts* of Congress in the *area of transportation.*

Va.Code Ann. § 33.1–12(5) (emphasis added).

Virginia Code section 33.1–215 provides:

> The *assent of the Commonwealth* of Virginia is hereby *given to the terms and provisions of an act of Congress,* approved July 11, 1916, entitled "An act to provide that the *United States shall aid the states* in the construction of rural post roads, and for other purposes," and the Commissioner shall have prepared and submit all such plans, specifications and data relating to the construction of roads and bridges as may be required under the terms of such act and *may do any and all things necessary to carry out the provisions of such act of Congress.*

Va.Code Ann. § 33.1–215 (emphasis added).[7]

One of the assurances which Virginia must provide in entering a contract with the Federal Highway Administration is that it "[w]ill comply with all applicable requirements of all other Federal laws, executive orders, regulations and policies governing this program." *See* Plaintiffs' Exhibit D. Plaintiffs assert that the FLSA is among the federal laws as to which this assurance has been given and that, having given that assurance, pursuant to Va. Code §§ 33.1–12(5) and 33.1–125, the Commonwealth has consented to suit in federal court under the FLSA.

This assertion reduces itself to the premise that the Commonwealth has waived its Eleventh Amendment immunity by consenting to comply with all federal laws. The argument

fails, however, because it conflicts directly with the decision in *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), wherein the Supreme Court found such assurances were insufficient to constitute a waiver of sovereign immunity.

In *Florida Department of Health and Rehabilitative Services,* an association of Florida nursing homes brought suit seeking retroactive relief allegedly due them because of delay in the enforcement of regulations, which were enacted to provide reimbursement on a cost related basis rather than on a flat rate. The Court of Appeals held that the action was not barred by the Eleventh Amendment because the state had consented to suit in federal court, *inter alia,* because the Department of Health and Rehabilitative Services had "agreed to recognize and abide by all State and Federal Laws, Regulations, and Guidelines applicable to participation in and administration of, the Title XIX Medicaid Program." The Supreme Court reversed, finding:

> the fact that the Department agreed explicitly to obey federal law in administering the program can hardly be deemed an express waiver of the Eleventh Amendment immunity. This agreement merely stated a customary condition for any participation in a federal program by the State, and *Edelman* already established that neither such participation in itself, nor a concomitant agreement to obey federal law, is sufficient to waive the protection of the Eleventh Amendment.

*Florida Department of Health and Rehabilitative Services,* 450 U.S. at 150, 101 S.Ct. at 1032 (citations omitted). Thus, under *Florida Department of Health and Rehabilitative Services,* the mere assurance by the Commonwealth that it will obey federal law in its contractual arrangements with the Federal Highway Administration is insufficient to constitute an express waiver of its Eleventh Amendment immunity.

---

**7.** The 1916 Act of Congress was amended in 1958 and became known as the Federal Highway Act of 1958. The 1958 act was amended by the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA).

Plaintiffs counter, however, that the court should weave the language of the Commonwealth's statutes, and its assurances, with two additional materials to find consent. First, plaintiffs refer the court to a memorandum which was directed to various VDOT officials. This memorandum noted the recommendation of the Commission on Intergovernmental Relations that the FLSA should not apply to state and local governments and that employees of the Commonwealth of Virginia were covered by the FLSA. Second, plaintiffs find significant the Commonwealth's Fair Labor Standards Act Policy Manual, which similarly establishes that employees of the Commonwealth are covered by the FLSA.

Taken as true, these facts may prove that the wage, hour and overtime provisions of the FLSA apply to state employees, an issue not presently before the court but one that seems evident from the 1974 amendments. However, those materials fail to demonstrate that the Commonwealth has waived its Eleventh Amendment immunity to suit in federal court for violating the FLSA.

### ii. Implied Waiver

Plaintiffs' argument that the Commonwealth has impliedly waived its Eleventh Amendment immunity fares no better. Specifically, plaintiffs assert that the Commonwealth has waived its immunity by operating its highway program and receiving federal funds with knowledge that: (i) the FLSA applies; and (ii) one of the remedies provided by the FLSA is the right of plaintiffs to commence suit in federal court for violation of the FLSA. For the reasons stated below, this argument fails to meet the test of waiver set by the Supreme Court's jurisprudence.

In addressing a contention that a state had 'constructively consented' to suit by participating in a federal program and agreeing to administer federal funds in accordance with federal laws, the Supreme Court has announced that "[c]onstructive consent is not a doctrine commonly associated with the sur-

render of constitutional rights, and we see no place for it here." *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). As the Court further explained:

> In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909) * * * The mere fact that a State participates in a program through which the Federal Government provides assistance to for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts.

*Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360.

In other words, the "'mere receipt of federal funds cannot establish that a State has consented to suit in federal court.'" *Atascadero*, 473 U.S. at 246–47, 105 S.Ct. at 3149 (citations omitted). To find a constructive waiver, the federal statute must not only authorize suit against a state, *Edelman, supra*, but must also "manifest a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity."[8] *Atascadero*, 473 U.S. at 247, 105 S.Ct. at 3149–50. Constructive waiver is so difficult to prove that at least one scholar has stated that "constructive waiver of Eleventh Amendment immunity is virtually nonexistent. If it ever will exist, it will be in situations where Congress indicates a clear intent to make states liable in federal court if they engage in a particular activity, and then a state voluntarily chooses to engage in that conduct." E. Chemerinsky, *Federal Jurisdiction*, 2d Edition at 410.

As explained above, the FLSA clearly evinced Congressional intent to abrogate the states' Eleventh Amendment immu-

---

**8.** The court similarly rejects plaintiffs' claim that no evidence exists to demonstrate that the Commonwealth accepted federal funds on the condition that it retain its sovereign immunity. This argument inverts the proper rule, which provides that the right of sovereign immunity is retained unless expressly waived.

nity. However, the FLSA is not a voluntary spending program giving states the opportunity to decide whether to accept the programs' benefits on the condition of waiving immunity. Hence, the FLSA cannot itself provide the predicate for a constructive waiver of immunity by acceptance of federal funds. Moreover, although the Federal Highway Act and the Intermodal Surface Transportation Efficiency Act of 1991 are optional spending programs, neither statute reflects Congressional intent to condition receipt of such funds on waiver of the States' Eleventh Amendment immunity. Nor have plaintiffs shown that any of the contracts made under the Federal Highway Act or the Intermodal Surface Transportation Efficiency Act condition the receipt of funds on compliance with the FLSA. Therefore, assuming that such contractual provisions would be sufficient to provide a predicate for a waiver by acceptance of funds, there is no basis here for a waiver of that genesis.

At most, plaintiffs have shown that receipt of federal highway funds is conditioned on compliance with all federal laws, including the FLSA. Such boiler plate language has been found insufficient to constitute a waiver of immunity. *See Florida Department of Health and Rehabilitative Services, supra.* For all of these reasons, the Court concludes that the Commonwealth of Virginia has not consented to waive its Eleventh Amendment immunity.

### CONCLUSION

For the foregoing reasons, the Commonwealth's Motion to Reconsider is granted and the action must be dismissed. The dismissal, of course, is without prejudice to prosecution of the plaintiffs' claims under the FLSA in state court.[9]

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

9. *See* Memorandum Opinion, dated December 18, 1996.