**Thomas PALOTAI, Plaintiff,**

v.

**UNIVERSITY OF MARYLAND COLLEGE PARK,**
**Defendant.**

**Civil Action No. DKC 96–3537.**

United States District Court,
D. Maryland.

April 8, 1997.

Philip B. Zipin, Gagliardo & Zipin, Silver Spring, MD, for Thomas Palotai.

Thomas Faulk, Office of the Asst. Atty. Gen., Baltimore, MD, J. Joseph Curran, Jr., Office of the Atty. Gen., Baltimore, MD, for University of Md. College Park.

### *MEMORANDUM OPINION*

CHASANOW, District Judge.

Plaintiff Thomas Palotai filed a six count complaint in this court against his employer, the University of Maryland College Park, alleging violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law, Md. Lab. & Empl.Code Ann. §§ 3–401—3–431, as well as breach of contract and/or unjust enrichment. Specifically, Plaintiff alleges that Defendant failed to compensate him for overtime work in violation of § 207(a) of the FLSA and §§ 3–415 and 3–420 of the Maryland Wage and Hour Law, and that Defendant breached both an oral contract and a contract based on Plaintiff's employee handbook by failing to pay Plaintiff certain wages.

Defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the Eleventh Amendment to the United States Constitution affords Defendant immunity from Plaintiff's suit in federal court. No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6. For the reasons that follow, Defendant's motion to dismiss will be granted.

### ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the literal terms of the Amendment do not so provide, the Eleventh Amendment

has long been interpreted also to prevent citizens from bringing suit against their own State in federal court. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). As the Supreme Court recently explained, " 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.' ... [F]irst, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.' " *Seminole Tribe of Florida v. Florida,* — U.S. —, —, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (citations omitted).

■ The immunity that the Eleventh Amendment confers extends also to state agencies and instrumentalities. The University of Maryland is such "an arm of the State partaking of the State's Eleventh Amendment immunity." *Bickley v. Univ. of Maryland,* 527 F.Supp. 174, 181 (D.Md.1981) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977), and citing *Moreno v. Univ. of Maryland,* 420 F.Supp. 541, 549–50 & n. 7 (D.Md.1976), *aff'd sub nom., Moreno v. Elkins,* 556 F.2d 573 (4th Cir.1977), *vacated on other grounds sub nom., Toll v. Moreno,* 441 U.S. 458, 99 S.Ct. 2044, 60 L.Ed.2d 354 (1979)).

■ State Eleventh Amendment sovereign immunity is not absolute, however. Congress, in certain circumstances, may abrogate the States' immunity. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976) (explaining that the Eleventh Amendment and the principle of state sovereignty which it embodies are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment; therefore, for purposes of enforcing the Fourteenth Amendment, Congress may provide for private suits against States which would be constitutionally impermissible in other contexts). Furthermore, a state may

1. The discussion of abrogation in this section pertains only to Plaintiff's FLSA claim, as that is

waive its protection under the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 671–678, 94 S.Ct. 1347, 1359–63, 39 L.Ed.2d 662 (1974).

Therefore, unless Congress has abrogated the States' immunity with respect to Plaintiff's causes of action, or unless Maryland has waived its protection under the Eleventh Amendment, the Eleventh Amendment will bar Plaintiff's claims against Defendant from proceeding in this court.

## A. ABROGATION

■ The first issue is whether Congress abrogated the States' Eleventh Amendment immunity in enacting the FLSA or in amending it to extend the application of the FLSA to State employees.[1] Resolution of this issue turns on a two part inquiry: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.' " *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985)).

The first step of the inquiry is relatively simple in this case. The FLSA contains an unmistakably clear intent to abrogate the States' sovereign immunity. The FLSA specifically provides that "[a]n action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

■ The critical question is the second part of the inquiry, namely, whether the FLSA was enacted "pursuant to a constitutional provision granting Congress the power to abrogate." *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1125. Defendant argues, and the court agrees, that in light of the Supreme Court's recent decision in *Seminole Tribe,* the answer must be no.

Plaintiff's only federal cause of action.

Congress expressly invoked the Interstate Commerce Clause (hereinafter also "the Commerce Clause"), U.S. Const., Art. I, § 8, cl. 3, as the source of its authority to enact the FLSA. The statement of policy and findings which preface the FLSA read as follows:

It is declared to be the policy of this chapter, *through the exercise by Congress of its power to regulate commerce among the several States* and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202(b) (emphasis added). Furthermore, every Supreme Court decision examining the constitutional limits to the reach of the FLSA has considered the FLSA to be a Commerce Clause enactment. *Taylor v. Virginia*, 951 F.Supp. 591, 595 (E.D.Va.1996) (citing *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1940); *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); and *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)). As a result of the recent *Seminole Tribe* decision, however, the Commerce Clause is no longer considered to be a source of authority pursuant to which Congress properly may abrogate the States' Eleventh Amendment immunity.

In *Seminole Tribe,* the Supreme Court held that the Indian Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, does not grant Congress authority to abrogate the States' Eleventh Amendment sovereign immunity. Although the enactment at issue in *Seminole Tribe* was passed by Congress pursuant to the Indian Commerce Clause, the necessary implication of the Court's decision is that the Interstate Commerce Clause also does not grant Congress the authority to abrogate the States' immunity. In deciding *Seminole Tribe,* the Court overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), in which a plurality of the Court had concluded that the Commerce Clause granted Congress the power to abrogate state sovereign immunity, because, the

*Union Gas* plurality opined, the power to regulate interstate commerce would be incomplete without the authority to render States liable in damages. According to the Court in *Seminole Tribe,* the decision in *Union Gas* "deviated sharply from our established federalism jurisprudence" namely, that "the Eleventh Amendment reflects 'the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Article III.'" *Seminole Tribe,* —— U.S. at —— ——, 116 S.Ct. at 1127–28 (quoting *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 97–98, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984)). In overruling *Union Gas,* the Court distinguished the only other case in which Congressional power to abrogate the States' Eleventh Amendment immunity had been upheld, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), which involved an exercise of Congressional power pursuant to § 5 of the Fourteenth Amendment. According to the Court, the rationale on which *Fitzpatrick* was based is "wholly inapplicable to the Interstate Commerce Clause," because the *Fitzpatrick* analysis springs from the fact that the Fourteenth Amendment was adopted after the Eleventh Amendment and was intended to alter the pre-existing state-federal balance, while the Commerce Clause pre-dated the Eleventh Amendment and simply was part of the balance struck before the Eleventh Amendment was ratified. *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1128 (citing *Union Gas,* 491 U.S. at 42, 109 S.Ct. at 2302–03 (Scalia, J., dissenting)). The *Seminole Tribe* Court thus concluded that the "Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." —— U.S. at —— —— ——, 116 S.Ct. at 1131–32.

■ Application of the principles set forth in *Seminole Tribe* compels the conclusion that Congress cannot abrogate the States' Eleventh Amendment immunity pursuant to the Commerce Clause, an Article I power. Therefore, the court concludes that Congress's purported waiver in the FLSA of the States' immunity is not valid, and many courts since the *Seminole Tribe* decision was

announced also have so held. *See, e.g., Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir. 1996), *amended by* 107 F.3d 358 (6th Cir. 1997); *Bergemann v. Rhode Island,* 958 F.Supp. 61 (D.R.I.1997); *Taylor v. Virginia,* 951 F.Supp. 591 (E.D.Va.1996); *Rehberg v. Department of Pub. Safety,* 946 F.Supp. 741 (S.D.Iowa 1996); *Raper v. Iowa,* 940 F.Supp. 1421 (S.D.Iowa 1996); *Chauvin v. Louisiana,* 937 F.Supp. 567 (E.D.La.1996); *Adams v. Kansas,* 934 F.Supp. 371 (D.Kan.1996); *Blow v. Kansas,* 929 F.Supp. 1400 (D.Kan.1996).[2]

## B. WAIVER

The court must now consider whether, as Plaintiff argues, Maryland has waived its Eleventh Amendment sovereign immunity.[3] In support of his waiver argument, Plaintiff points to two Maryland statutes which waive the University's "sovereign immunity" defense for purposes of certain employee disputes.

■ The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146. As the Supreme Court has explained:

> Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam) ... "a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." [*Pennhurst* ], 465 U.S. at 99, 104 S.Ct. at 907. Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify

the State's intention to subject itself to suit in *federal court.*

*Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146–47. A waiver of Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464–65, 53 L.Ed. 742 (1909)).

■ The first provision of Maryland law which Plaintiff cites in support of his waiver argument, Md. Educ.Code Ann. § 13–207(a) (formerly 13–1a–07(a)), provides:

> *Defense of sovereign immunity unavailable.*—The defense of sovereign immunity may not be available to the University, unless otherwise specifically provided by the laws of Maryland, in any administrative, arbitration, or judicial proceeding held pursuant to this section, to the rules and regulations of the Secretary of Budget and Management, or the personnel policies, rules, and regulations for classified employees of the University of Maryland System involving any type of employee grievance or hearing, including, but not limited to charges for removal, disciplinary suspensions, involuntary demotions, or reclassifications.

The second statute relied upon by Plaintiff, Md. State Pers. & Pens.Code Ann. § 14–103, provides:

> Except as otherwise specifically provided by State law, this State, its officers, and its units may not raise the defense of sovereign immunity in any administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under:
>
> (1) this Division I or a regulation adopted under it; or

---

**2.** Plaintiff has not attempted to argue in this case that the purported abrogation of immunity in the FLSA can be justified as a valid exercise of authority pursuant to the Fourteenth Amendment. For the sake of completeness, however, the court notes its agreement with those courts which have considered, and rejected, arguments that the abrogation is valid because Congress

acted, or could have acted, pursuant to § 5 of the Fourteenth Amendment in enacting the FLSA. *See, e.g., Wilson–Jones,* 99 F.3d 203; *Bergemann,* 958 F.Supp. 61; *Taylor,* 951 F.Supp. 591; *Raper,* 940 F.Supp. 1421; *Chauvin,* 937 F.Supp. 567.

**3.** The court's discussion of waiver in this section is relevant to all of Plaintiff's claims.

(2) a personnel policy or regulation that governs classified employees of the University of Maryland System or Morgan State University.

By arguing that these two provisions, without more, entitle him to proceed with his claims in federal court, Plaintiff fails to appreciate the distinction between the general common law doctrine of sovereign immunity and the constitutional immunity conferred by the Eleventh Amendment, and ignores the Supreme Court's settled Eleventh Amendment jurisprudence which makes clear that a general waiver of sovereign immunity is not a waiver of a State's immunity from federal-court jurisdiction. These two provisions constitute nothing more than the kind of general waiver of sovereign immunity which the Supreme Court in *Florida Dep't of Health v. Florida Nursing Home Assn.*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034–35, 67 L.Ed.2d 132 (1981) (per curiam), counsels will not suffice to waive the immunity guaranteed by the Eleventh Amendment. Neither of these sections of the Maryland Code, nor the other statutory provisions to which they refer, indicate the State's intention to subject itself (or the University of Maryland) to suit in federal court. *See Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146–47.

▮ As noted above, the standard for finding a waiver of Eleventh Amendment immunity is a stringent one. *Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146–47; *see also Weide v. Mass Transit Admin.*, 628 F.Supp. 247, 250–51 (D.Md.1985) (noting Supreme Court's reluctance to infer waiver, and holding that general waiver of sovereign immunity in Md. Transp. Code Ann. § 7–702 does not make state agency subject to § 1983 claim in federal court); *see generally* Edwin Chemerinsky, *Federal Jurisdiction*, 407 (2d ed.1994) (noting that Supreme Court's test for finding express waivers of the Eleventh Amendment is so stringent that it is quite unlikely that very many will be found). The court finds that the statutes cited by Plaintiff

fall far short of providing the "express language" or "overwhelming implications," *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361, needed for a federal court to conclude that a State has consented to be sued in federal court. The court therefore holds that, based on the statutes cited by Plaintiff, Maryland has not waived the University's Eleventh Amendment immunity from federal-court jurisdiction, and Plaintiff must proceed with his claims against Defendant, if at all, in state court.[4]

As a final note, the court wishes to comment briefly on the relationship between the Eleventh Amendment and the different bases for federal jurisdiction. In his complaint, Plaintiff asserted federal question jurisdiction based on his FLSA claim, with pendent jurisdiction over his state claims. In response, Defendant argued that federal jurisdiction was precluded because the FLSA was not a valid source of federal jurisdiction over a state entity in light of *Seminole Tribe*. As a last ditch effort to save his complaint from dismissal, Plaintiff argued in his opposition brief that diversity of citizenship actually is the basis for federal jurisdiction. The court's conclusion that the Eleventh Amendment precludes Plaintiff from pursuing his instant claims against Defendant in federal court, however, does not depend on the asserted basis for federal jurisdiction.

▮ Where federal question is the predicate for federal jurisdiction, it is settled law that the Eleventh Amendment bars adjudication of pendent state law claims in federal court. *See Pennhurst*, 465 U.S. at 117–23, 104 S.Ct. at 917–21. In *Pennhurst*, the Supreme Court specifically prohibited the maintenance of a state law claim against a state agency in federal court, holding that the Eleventh Amendment bars such actions regardless of the jurisdictional theory under which they are brought, *see id.* at 121, 104 S.Ct. at 919, unless, of course, the State waives its immunity. *Cf. id.* at 103 n. 12, 104

---

4. It is not even clear that the limited waivers of sovereign immunity in these statutes by their terms even encompass all of Plaintiff's claims, and under Maryland law, statutory waivers of sovereign immunity are narrowly and strictly construed. *See, e.g., Maryland Cent. Collection*

*Unit v. DLD Assocs. Ltd.*, 112 Md.App. 502, 685 A.2d 873, 878 (Ct.Spec.1996). The extent of the waiver will, of course, be a matter for resolution by the state courts should Plaintiff choose to pursue his claims there.

S.Ct. at 909 n. 12 (rejecting respondents' argument, in support of their right to judgment on state law claims, that State had waived its immunity from suit in federal court). The Court stated that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. at 919. Therefore, even had the court found a valid abrogation as to the FLSA claim, Plaintiff still would not be able to prosecute his state law claims against Defendant in federal court absent a clear waiver by the State of the Eleventh Amendment's protection.

█ If Plaintiff instead wishes to rely on diversity of citizenship as the basis for federal jurisdiction, his complaint fairs no better. Diversity of citizenship surely cannot be used to circumvent the Eleventh Amendment. As noted immediately above, the Supreme Court has held that "neither pendent jurisdiction *nor any other basis of jurisdiction* may override the Eleventh Amendment." *Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919 (emphasis added). Furthermore, it was the allowance of a claim by a citizen of South Carolina against the State of Georgia in *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793), that prompted the adoption of the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 97, 104 S.Ct. at 906 (noting that the *Chisholm* decision "created such a shock of surprise that the Eleventh Amendment was at once proposed and adopted") (quoting *Monaco v. Mississippi,* 292 U.S. 313, 325, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934)). Finally, the explicit terms of the Eleventh Amendment restrict the diversity jurisdiction of the federal courts: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States *by Citizens of another State....*" U.S. Const. Amend. XI (emphasis added); *see Seminole Tribe,* — U.S. at ——, 116 S.Ct. at 1122.

█ In sum, regardless of the asserted basis for federal jurisdiction, a federal court must examine each claim in a case against a state entity to see if the court's jurisdiction over the claim is barred by the Eleventh Amendment. Had the court found a valid abrogation or waiver as to *any* of Plaintiff's claims, it still would have been compelled to dismiss the remaining claims as to which there was no valid abrogation or waiver. Having found, however, no valid abrogation or waiver of Eleventh Amendment immunity as to *all* of Plaintiff's claims, the court must dismiss Plaintiff's complaint in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is dismissed in its entirety. This dismissal is, of course, without prejudice to Plaintiff's right to refile in state court. A separate order will be entered.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, IT IS this 8th day of April, 1997, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion to dismiss BE, and the same hereby IS, GRANTED;

2. Plaintiff's complaint BE, and the same hereby IS, is dismissed without prejudice; and

3. The Clerk will mail a copy of the foregoing Memorandum Opinion and Order to counsel for the parties, and close this case.