**Elaine L. CHAO, Secretary, United States Department of Labor, Plaintiff,**

v.

**VIRGINIA DEPARTMENT OF TRANSPORTATION, Defendant.**

**Civ. A. No. 3:00CV457.**

United States District Court, E.D. Virginia, Richmond Division.

July 18, 2001.

Joan R. Evans, Esquire, Assistant United States Attorney, United States Attorney's Office, Richmond, VA, Elizabeth L. Beason, Esquire, Office of the Solicitor, United States Department of Labor, Arlington, VA, for Plaintiff.

Sydney E. Rab, Esquire, Judith W. Jagdmann, Esquire, Office of the Attorney General, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

The Plaintiff, Elaine L. Chao, United States Secretary of Labor,[1] seeks relief against the Defendant, the Virginia Department of Transportation (VDOT), to enjoin violations of sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act (FLSA) under section 17, 29 U.S.C. § 217. Specifically, the Amended Complaint asks for: (1) a ruling that the private actions filed and diligently pursued by individual employees in federal and state courts equitably tolled the statute of limitations to permit recovery of back wages for willful violations of the FLSA; (2) an order enjoining VDOT from withholding payment of back wages found due to its employees, as well as pre-judgment interest (computed under 26 U.S.C. § 6621); and (3) an order permanently enjoining and restraining VDOT from violating sec-

---

1. The action was filed by Alexis M. Herman who is no longer the Secretary of Labor. It has been recaptioned to reflect that Elaine L. Chao, the current Secretary of Labor, has been substituted as the Plaintiff. *See* Fed. R.Civ.P. 25(d).

tions 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA.

## BACKGROUND

Section V of the Amended Complaint alleges that, from approximately December 22, 1992 through December 31, 1994, in many workweeks, VDOT willfully violated the provisions of sections 7 and 15(a)(2) of the FLSA by not paying overtime to persons employed as Transportation Construction Inspectors and/or Transportation Inspectors Senior ("inspectors") for travel time between work sites. Section VI of the Amended Complaint alleges that VDOT violated section 11(c) of the FLSA by failing to maintain accurate records of hours worked by inspectors traveling between work sites (although the Amended Complaint notes that regulations require these records be kept only for three years).

These claims have been pursued since 1995 in federal and state court by individual employees. Specifically, several inspectors filed an action, *Taylor, et al. v. Commonwealth of Virginia, Department of Transportation,* Civil Action No. 3:95cv1026, in this Court on December 22, 1995 against VDOT and the Commonwealth of Virginia. *Taylor v. Virginia,* 951 F.Supp. 591, 592–93 (E.D.Va.1996). Notice of that action was sent to similarly situated VDOT employees, and 352 inspectors ultimately joined as plaintiffs. *Taylor* was consolidated with two similar actions, *Kennedy v. Commonwealth of Virginia, Department of Transportation,* Civil Action No. 3:96cv72, and *Boswell v. Commonwealth of Virginia, Department of Transportation,* Civil Action No. 3:96cv300. In *Taylor,* the inspectors sought overtime compensation for hours worked traveling between work sites, liquidated damages, injunctive relief, attorneys fees and costs. That action was dismissed on December

18, 1996 following, and because of, the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Secretary was not a party to the *Taylor* litigation, but did file a brief respecting the effect of *Seminole Tribe* on the action.

However, before the federal action was dismissed and as a result of the State's motion to dismiss because of the decision in *Seminole Tribe,* the inspectors filed suit in the Circuit Court for the City of Richmond on October 8, 1996. *See Griffin, et al. v. Virginia Department of Transportation,* LB 2505–1. There they alleged the same violations of the FLSA as were at issue in *Taylor* and they sought essentially the same relief. The state trial judge ruled that the federal court action had tolled the statute of limitations for the state court proceeding. The state trial judge decided to try the cases in groups. After a jury trial of the claims of the first group of 40 employees, judgment was entered for VDOT and against those 40 employees on November 4, 1998. Those inspectors appealed, and on February 9, 2000, the Supreme Court of Virginia denied their appeal.

The Secretary moved to intervene in the state suit and filed an Amended Motion for Judgment on September 3, 1999. The Secretary's motion to intervene was denied on the grounds that the Secretary could not intervene to litigate alongside the inspectors because the inspectors' actions were barred by sovereign immunity. *See* Def.'s Ex. I. On May 10, 2000, the state trial judge dismissed the actions by the remaining employees (roughly 310) who had not received a final decision on the merits of their claims, relying on *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) and *Commonwealth v. Luzik,* 259 Va. 198, 524 S.E.2d 871 (2000),

which held that the Commonwealth may not be sued by its employees in state court for violations of the FLSA without its consent.

The Secretary then filed this action on July 18, 2000. It involves the claims of roughly 100 employees who were plaintiffs in *Taylor* and *Griffin* and who have not had the merits of their claim heard in federal or state court. The Secretary does not here pursue the claims relating to the other 210 *Taylor/Griffin* plaintiffs because the Secretary interprets the law on compensable time more narrowly than those inspectors did in their private claims. VDOT has filed a Motion to Dismiss for Want of Subject Matter Jurisdiction and a Motion for Summary Judgment on the grounds that the statute of limitations has run. For the reasons set forth below, both motions are denied.

## DISCUSSION

### I. Motion to Dismiss for Want of Subject Matter Jurisdiction

VDOT moves to dismiss on grounds that fall into two general categories.[2] First, according to VDOT, the Secretary has modified her policy so that it is now in line with VDOT's. Indeed, the Secretary does not allege that VDOT is continuing to violate the FLSA. *See* Plaintiff's Response to the Defendant's Motion to Dismiss for Want of Subject Matter Jurisdiction at 2. Therefore, VDOT argues that there is no "case or controversy" because the Secretary acknowledges that VDOT is no longer violating the FLSA respecting travel time. Into that argument, VDOT folds a standing objection, contending that the Secretary will not be able to secure a prospective injunction because there is no

evidence that VDOT will violate the FLSA in the future and that, therefore, an injunction against withholding back pay cannot be entered without a prospective injunction against violating the FLSA. Also, in the view of VDOT, the Employee Commuting Flexibility Act of 1996 (ECFA), 29 U.S.C. § 254, resolves the substantive dispute in favor of VDOT, thereby making a prospective injunction unnecessary.

Second, VDOT argues that "principles of State sovereignty, the Eleventh Amendment, and Article III Standing combine to preclude this action for retroactive monetary relief for the benefit of state workers." This melded standing and immunity argument proceeds on the premise that the primary objective of this action is private in that there is no public purpose in it and then asserts that the Secretary cannot sue on behalf of the inspectors because this is essentially a private action.

For the reasons set forth below, VDOT's arguments fail and the Motion to Dismiss for Want of Subject Matter Jurisdiction is denied.

### A. There is a Case and Controversy

There are two parts to the controversy: first, whether VDOT violated the FLSA and owes back wages, and second, whether a prospective injunction should issue because of a likelihood that VDOT will violate the FLSA in the future. 29 U.S.C. § 217 confers upon this Court the power "to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter."

---

**2.** In addition, VDOT argues in the Motion to Dismiss for Want of Subject Matter Jurisdiction that the record keeping violations are

barred by the statute of limitations. This argument will be addressed in Section II, *infra,* on VDOT's Motion for Summary Judgment.

### 1. The ECFA Does Not Moot This Controversy

 Contrary to VDOT's assertion, the ECFA does not render moot either aspect of the controversy. ECFA provides that no employer shall be liable for failure to compensate an employee for the following activities engaged in on or after May 14, 1947:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). ECFA applies retroactively, and both parties agree that it applies to the employees in this action. *See Baker v. GTE North Inc.*, 110 F.3d 28 (7th Cir.1997). In deciding whether ECFA forecloses liability, "[e]ach case turns on the particular facts and circumstances involved." *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1117 (10th Cir.1999).

ECFA, however, does not resolve the dispute over whether the travel time at issue in this case is uncompensated commuting time or is travel between two work sites and therefore part of the employees' principal activities. In this case, the Secretary alleges, *inter alia*, that the inspectors needed the vehicles and tools picked up at the storage facilities in order to perform their jobs. If that is the case, then ECFA does not moot the Secretary's claim. Therefore, it would be premature to dismiss this action on the basis that ECFA moots the controversy plainly and adequately stated in the Amended Complaint. *See, e.g., United Transp. Union Local 1745*, 178 F.3d at 1118–20 (shuttle time of bus drivers to and from relief points at either end of split shifts is compensable because "the drivers *must* get to and from diverse relief points if they are to perform their principal activity of driving the particular bus route assigned to them"); *Herman v. Rich Kramer Constr., Inc.*, 163 F.3d 602, 1998 WL 664622, *1–*2 (8th Cir.1998) (unpublished) (time of foremen before driving to a job site during which they loaded trucks, received assignments, and studied blueprints, and time returning to headquarters, when they filled out time sheets, unloaded and locked trucks, and secured equipment, was compensable because time was spent driving between work sites and the employer "could not have constructed buildings without the tools, supplies, and employees transported by foremen"). Under the applicable law and the factual assertions in the Amended Complaint, VDOT's contention that this action is rendered moot by ECFA lacks merit and must be rejected.

### 2. This Court Can Issue a Prospective Injunction in the Absence of Present Violations, Based on Findings of Fact

 The Secretary, as the party asserting jurisdiction, bears the burden to

satisfy the Court that an injunction is necessary. *Metzler v. IBP, Inc.,* 127 F.3d 959, 963 (10th Cir.1997). Contrary to VDOT's contention, it is clear that a district court is empowered to issue a prospective injunction against violating the FLSA in the absence of a finding of current violations of the FLSA. As the United States Court of Appeals for the Tenth Circuit has explained, district courts:

> properly look at many factors in determining whether to grant a prospective injunction, including the employer's previous conduct, its current conduct, and the reliability of its promises of future compliance. When a past violation is found, courts balance that finding against factors indicating a reasonable likelihood that the violation will not recur, such as the employer's intent to comply, extraordinary efforts taken to prevent recurrence, the absence of repetitive violations, and the absence of bad faith.

*IBP, Inc.,* 127 F.3d at 963–64 (citations omitted). In articulating this test, the Tenth Circuit drew on, and had the support of, opinions of many other Courts of Appeals that use identical or substantially similar tests. *See, e.g., Reich v. Petroleum Sales, Inc.,* 30 F.3d 654, 657 (6th Cir.1994); *Martin v. Coventry Fire Dist.,* 981 F.2d 1358, 1362 (1st Cir.1992); *Brock v. Big Bear Market No. 3,* 825 F.2d 1381, 1383 (9th Cir.1987); *Marshall v. Van Matre,* 634 F.2d 1115, 1117–18 (8th Cir.1980) ("Where the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations"); *Dunlop v. Davis,* 524 F.2d 1278, 1281 (5th Cir.1975). ■ Current compliance with the FLSA alone, especially when it results from scru-

tiny by the federal government, is not sufficient grounds for denying a prospective injunction. *IBP, Inc.,* 127 F.3d at 964; *Martin v. Funtime, Inc.,* 963 F.2d 110, 114 (6th Cir.1992); *Big Bear Market No. 3,* 825 F.2d at 1383. The number of FLSA violations and when they occurred in relation to a federal investigation or lawsuit also are factors a district court can consider in determining whether to grant a prospective injunction. *Funtime, Inc.,* 963 F.2d at 115; *Big Bear Market No. 3,* 825 F.2d at 1383. In this case, it is alleged that the rights of over 100 employees were allegedly violated over the course of several years. Thus, these factors are at issue in this action.

The Secretary and VDOT have a continuing dispute over the application of the ECFA to the inspectors' travel time, and disagreement between a defendant and compliance officers concerning the defendant's obligations also has been found to warrant issuance of a prospective injunction. *See Hodgson v. Griffin and Brand of McAllen, Inc.,* 471 F.2d 235, 238 (5th Cir.1973).

■ Willfulness of FLSA violations is also relevant to determining the likelihood of future violations and has been considered by courts as another factor in determining whether a prospective injunction should issue in the absence of current violations. *See Funtime, Inc.,* 963 F.2d at 113; *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 306 (N.D.N.Y.1978); *Hodgson v. Ricky Fashions, Inc.,* 434 F.2d 1261, 1263 (5th Cir.1970). The Secretary has alleged the willfulness of VDOT's alleged violations as a factor in determining whether a prospective injunction should issue, and the determination of willfulness depends on findings of fact. "The standard for determining willfulness is whether the employer either knew, or showed reckless disregard, as to whether his con-

duct violated the Act." *Martin v. Deiriggi,* 985 F.2d 129, 135 (4th Cir.1993).

As the preceding analysis shows, compliance with the FLSA at the time a court rules on a request for a prospective injunction does not, standing alone, preclude issuance of a prospective injunction, and the issuance of a prospective injunction depends on findings of fact which cannot be made in deciding this motion. If a prospective injunction can issue in the face of current compliance, it follows that a complaint for a prospective injunction under the FLSA need not allege a present violation in order for the district court to have jurisdiction. *See, e.g., Wirtz v. Young Elec. Sign Co.,* 315 F.2d 326 (10th Cir. 1963) (Tenth Circuit vacated district court's dismissal of an action for a prospective injunction in which the plaintiff had no evidence of violations occurring at the time the complaint was filed and no proof of a present intent to violate the FLSA in the future).

### 3. Even if a Prospective Injunction Against Future Violations is Not Issued, a Restitutionary Injunction Can be Issued

■ VDOT asserts that a restitutionary injunction cannot issue without a prospective injunction. This argument fails when considered in perspective of the provisions of 29 U.S.C. § 217 which provides:

The district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title). .

This statute confers jurisdiction on district courts to issue restitutionary injunctions, to restrain the withholding of back wages, as well as prospective injunctions, to restrain future violations of the FLSA.

By the plain reading of this statute, a district court can restrain any violation of section 215. One type of violation that a district court can restrain is the employer's continued withholding of minimum wages and overtime compensation, which is a violation of section 215(a)(2). The parenthetical phrase at the end of section 217 supports the interpretation that actions under section 217 can be brought in the absence of a prior ruling that wages or overtime compensation are due.

As VDOT aptly comments, a restraint of the withholding of compensation is an awkward turn of phrase and an awkward description of a form of relief, but it is nevertheless a remedy under section 217. Without doubt, it is a somewhat unusual remedy, but, apart from that, the statute explicitly states that a section 215 violation can be remedied through an injunction under section 217.

■ Thus, a plain reading of section 217 leads to the conclusion that a district court can grant a restitutionary injunction in the absence of a prospective injunction. "[W]hen the terms of a statute are unambiguous, 'judicial inquiry is complete, except "in 'rare and exceptional circumstances.'"'" *United States v. Lund,* 853 F.2d 242, 245 (4th Cir.1988). VDOT has presented no such exceptional circumstances.

As the United States Court of Appeals for the Ninth Circuit explained, "[t]he contention that an injunctive restraint against further withholding of past due overtime compensation may be awarded only as part

and parcel of an injunction against future violations is predicated upon a narrow, technical and untenable interpretation of the Act." *Wirtz v. Milton J. Wershow Co.,* 416 F.2d 1071, 1072 (9th Cir.1969). The United States Court of Appeals for the Fifth Circuit has followed this interpretation of section 217 in *Donovan v. Brown Equip. and Serv. Tools, Inc.,* 666 F.2d 148 (5th Cir.1982). There, the Fifth Circuit reversed a district court's denial of a restitutionary injunction and affirmed its denial of a prospective injunction, thereby explicitly sanctioning the issuance of a restitutionary injunction in the absence of a prospective one.

■ VDOT correctly points out that this reading of section 217 means that, when the Secretary seeks to obtain back wages, she has the option of choosing whether to file a complaint under section 216 or section 217. Actions under section 216 afford the Secretary the ability to seek liquidated damages and afford the defendant a right to a jury trial; actions under section 217 afford the Secretary the ability to seek an injunction, but the defendant does not have a right to a jury trial.

The Court of Appeals for the Fourth Circuit has explained:

> the statutory scheme gives the Secretary a choice: if she wants to recover liquidated damages, the price she pays is a jury trial for the defendant on the back pay issue; if she would rather forgo the jury trial, she can opt for injunctive relief under § 217 and obtain a back pay award as an equitable remedy incidental to an injunction.

*Martin v. Deiriggi,* 985 F.2d 129, 134 (4th Cir.1993). This articulation of statutory constraint quite clearly supports the position that the Secretary has a choice of bringing a complaint for back wages under either section 216 or section 217. And, that passage is consistent with an interpretation of section 217 to permit an award of a restitutionary injunction independent of an award of a prospective injunction.

VDOT argues that the word "incidental" in the above passage means that the award of back pay must be tethered to a prospective injunction. That is not a permissible reading of the statutory text which permits the award to be "incidental to an injunction" without limiting whether it is prospective or restitutionary. Nor, contrary to VDOT's position, did the Fourth Circuit address, in *Deiriggi,* the issue presented here: to which type of injunction—restitutionary or prospective—is a back pay award incidental. A restitutionary injunction would necessarily have an incidental back pay award.

■ Therefore, even if a prospective injunction is not issued or even if the analysis in Section IA2, *supra,* is incorrect (and the Court cannot issue a prospective injunction), the Court nevertheless has the ability to issue a restitutionary injunction independent of a prospective injunction.[3] That, of course, is in keeping with the basic tenet that the FLSA, as a remedial statute, "must not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944); *see also Benshoff v. City of Virginia Beach,* 180 F.3d 136, 140 (4th Cir.1999); *Ball v. Memphis Bar-B-Q Co., Inc.,* 228 F.3d 360, 364 (4th Cir. 2000). That is especially true where, as here, the action involves the equitable powers of the Court and the public interest. "[S]ince the public interest is involved

---

**3.** And if, as VDOT alleges, the Secretary has modified her position on commuting time so that VDOT is now in compliance with it, this action is not moot for the same reasons that current compliance does not render the action moot.

... those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *see also Fed. Savings & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 562 (5th Cir.1987) ("[t]he general flexibility of equitable powers is enhanced where, as here, the public interest is at stake").

## B. The Secretary's Suit Serves a Public Interest and Therefore is Not Barred by Sovereign Immunity or Standing

■■■■ VDOT's argument that the Secretary's action is, in effect, a private action and is therefore barred by sovereign immunity and by a defect in standing cannot withstand serious scrutiny. The requested injunctions—both prospective and restitutionary—serve public interests. The FLSA is "remedial and humanitarian in purpose." *Tennessee Coal, Iron & R. Co.,* 321 U.S. at 597, 64 S.Ct. 698. "The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), citing H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21 and 28. These statutory goals serve fundamental public interests as defined by Congress and as long recognized by the judicial branch. Both prospective and restitutionary injunctions serve those goals.

In particular, "[p]ermanent prospective injunctions serve to effectuate congressional policy against substandard labor conditions by preventing future violations." *IBP, Inc.,* 127 F.3d at 963. Injunctions of

that sort place the cost of compliance on the employer, but they are not an impossible burden because they simply require the employer to comply with the law and do what the FLSA requires. *Id.; see also Petroleum Sales, Inc.,* 30 F.3d at 656; *Funtime, Inc.,* 963 F.2d at 113–14; *Big Bear Market No. 3,* 825 F.2d at 1383.

■■■■ Restitutionary injunctions serve dual purposes. One purpose is to compensate employees for losses they have sustained. Injunctions of this sort serve a clearly accepted public purpose. As the Fifth Circuit has explained:

> The second major purpose is "to correct a continuing offense against the public interest." Therefore, a district court, in deciding whether to grant a restitutionary injunction, may not focus only on the interests of the parties to the suit before it. Requiring the payment of back wages is meant both to "increase the effectiveness of the enforcement of the Act by depriving a violator of any gains accruing to him through his violation," and to protect those employers who comply with the Act's wage requirements from having to compete unfavorably with those who fail to comply.

*Brown Equip. and Serv. Tools, Inc.,* 666 F.2d at 156–57 (citations omitted); *see also Reich v. Monfort, Inc.,* 144 F.3d 1329, 1335 (10th Cir.1998). In fact, "a district court, in deciding whether to grant a restitutionary injunction, may not focus only on the interests of the parties to the suit before it." *Brown Equip. and Serv. Tools, Inc.,* 666 F.2d at 157. Even though VDOT is a state employer, a restitutionary injunction could serve both purposes in this case by (1) depriving VDOT of any gains it received through the alleged violations, thereby removing any incentive to engage in future violations, and (2) protecting employers that comply with the FLSA and

may apply for contracts with the Commonwealth of Virginia.

Of course, the private actions filed by the inspectors, had they been heard on the merits, could have vindicated the private interest and part of the public interest served by the restitutionary injunction.[4] The Secretary attempted to intervene in the inspector's private state court suit when it became clear that her involvement was necessary in order for the alleged past violations to be resolved on the merits, and VDOT opposed her intervention. The present action brought by the Secretary serves both the public and private interests raised by the inspector's suits, and, through the requested prospective injunction, the additional public interest in "effectuat[ing] the] congressional policy against substandard labor conditions by preventing future violations." *IBP, Inc.*, 127 F.3d at 963. The present suit, therefore, seeks to vindicate a public interest. It is not a private suit, although, like many suits in the public interest, it may have private as well as public benefits.

 Because this action is in the public interest, the Secretary does not lack standing to bring the suit. The three elements of standing are: (1) an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) an injury fairly traceable to the challenged conduct (causation); and (3) redressability of the injury by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The alleged injury to the public interest is the failure of VDOT to comply with the provisions of the FLSA, specifically the withholding of compensation and the failure to keep records. This injury is concrete, particularized, and actu-

al. It is traceable to VDOT's conduct and it can be redressed by a decision of this Court.

 Because this action is by the Secretary and in the public interest, it is not barred by sovereign immunity. While *Seminole Tribe of Florida v. Florida* and *Alden v. Maine* made it clear that inspectors, as individuals, could not pursue their claims for back pay, these decisions did not remove the ability of the United States, through the Secretary, to seek a restitutionary or prospective injunction against a state under section 217. *See Employees of Dep't of Pub. Health and Welfare v. Dep't of Pub. Health and Welfare*, 411 U.S. 279, 286, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) ("suits by the United States against a State are not barred by the Constitution"). As *Alden* explained:

> In ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government. A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., Art. II, § 3, differs in kind from the suit of an individual. . . . Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.

*Alden*, 527 U.S. at 755–56, 119 S.Ct. 2240 (citation omitted).

 Although VDOT, as an employer, is immune from suits by private parties, it does not enjoy "a concomitant right to disregard the Constitution or valid

---

**4.** The suit by the inspectors could not have vindicated the public interest served by the Secretary's enforcement of the record keeping provision in 29 U.S.C. § 211(c), alleged to have been violated by VDOT.

federal law. The States and their officers are bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design." *Id.* at 755, 119 S.Ct. 2240.[5]

Before *Alden*, the United States Court of Appeals for the Fifth and Eighth Circuits addressed the issue whether the Secretary may sue a state for back wages under the FLSA. Suits brought by the Secretary of Labor to enforce the FLSA are prosecuted by the United States. *Brennan v. Iowa*, 494 F.2d 100, 103 (8th Cir.1974). Accordingly, the state could not assert sovereign immunity as a bar to such an action, and, because of the public purpose of the action, the Eighth Circuit found "no merit in the argument that th[e] action is, in substance, an action by the employees against the state." *Id.* at 104. Similarly, the Fifth Circuit has noted that an action brought by the Secretary of Labor under the FLSA is one that is brought by the United States, and "can be in the public interest even if the money sued for passes to private individuals." *Marshall v. A & M Consol. Indep. Sch. Dist.*, 605 F.2d 186, 188–89 (5th Cir.1979). "A State's sovereign immunity does not preclude suits brought in federal court by the federal government ... because inherent in the plan of the Constitutional Convention was the surrender by the States of immunity as to these suits." *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 289 n. 1 (4th Cir.2001).

VDOT has cited no authority for the proposition that the doctrines related to standing, state sovereign immunity, and the Eleventh Amendment, in combination, can prohibit what any one doctrine per-

mits. Accordingly, the motion to dismiss is denied.

## II. Motion for Summary Judgment

The statute of limitations for actions under the FLSA for unpaid minimum wages, unpaid overtime compensation, and liquidated damages is set out in 29 U.S.C. § 255.[6] The statute of limitations is two years for such causes of action accruing on or after May 14, 1947, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The Amended Complaint alleges that the FLSA violations were willful and seeks a ruling that the private actions filed by inspectors in state and federal court equitably tolled the statute of limitations to permit the recovery of unpaid wages. In particular, the Secretary asks that the statute of limitations be tolled from December 22, 1995, when the inspectors filed a complaint in federal district court, to July 18, 2000, during which the inspectors were pursuing their FLSA suit and the Secretary was attempting to intervene in that suit. Plaint.'s Resp. to Def.'s Motion for Summary Judgment at 4.

The Secretary and VDOT agree that, if the statute of limitations is not tolled, then it will have run for all claims because the latest violation allegedly occurred on December 31, 1994 and the action was filed on July 18, 2000. The Secretary concedes that, unless the statute of limitations is tolled, this action would have had to have been filed by December 31, 1997 for the action not to be barred completely. *See* Plaint.'s Response to the Defendant's Motion for Summary Judgment at 3 n. 2. VDOT moved for summary judgment on

---

**5.** VDOT has presented no argument that section 217 is unconstitutional. Feb. 7, 2001 Tr. at 68.

**6.** The Secretary's action is under 29 U.S.C. § 217, which bars recovery through a restitutionary injunction of sums barred from recovery by the provisions of section 255.

the Secretary's request for equitable tolling of the statute of limitations. For the reasons set forth below, VDOT's Motion for Summary Judgment is denied. Based on the evidence presented for this Motion for Summary Judgment, the duration of the tolling cannot be established.[7]

## A. The Doctrine of Equitable Tolling

The analysis of whether the statute of limitations was tolled must begin with an inquiry into the purpose of limitation statutes, which, of course, are "primarily designed to assure fairness to defendants." *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Specifically, statutes of limitations "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.*

Two equitable doctrines, equitable tolling and equitable estoppel, can save actions from the bar that would otherwise be imposed by a statute of limitations. These doctrines are often confused, and in this case it is important to distinguish between them. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1991).

Equitable estoppel refers to "the maxim that no man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). "'The principle is that where one party has by

his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.'" *Id.* at 234, 79 S.Ct. 760. In other words, "a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." 28 *Am. Jur.2d* § 40 (2000). Scholars on equity jurisprudence have defined equitable estoppel as follows:

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

Spencer W. Symons, 3 *Pomeroy's Treatise on Equity Jurisprudence* § 804 (5th ed.1941); *see also* W.H. Lyon, Jr., 3 *Story's Commentaries on Equity Jurisprudence* § 1989 (14th ed.1918). Equitable estoppel is not limited in its application to statutes of limitations.

In contrast, it is settled that the quite different doctrine of equitable tolling works to toll a statute of limitations "if such tolling is necessary to prevent unfairness to a diligent plaintiff." 51 *Am. Jur.2d* § 174 (2000). The Supreme Court set forth the test for equitable tolling in *Irwin v. Dep't of Veterans Affairs*, 498

**7.** The Amended Complaint seeks tolling of the statute of limitations until July 18, 2000, although the *Griffin* action was dismissed on May 10, 2000.

U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

> Federal courts have typically extended equitable relief only sparingly. We have *allowed equitable tolling* in situations where the *claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or* where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Id.* at 96, 111 S.Ct. 453 (citations omitted) (emphasis added). Under this test, equitable tolling requires *either* a plaintiff's diligence in pursuing remedies by filing a defective pleading *or* misconduct by the defendant. Equitable tolling does not require misconduct by a defendant in all circumstances. The circumstances in which courts have applied equitable tolling can be classified into three general categories.

### 1. Equitable Tolling Under Extraordinary Circumstances

First, statutes have been equitably tolled where "extraordinary circumstances prevented the plaintiff from filing despite his or her diligence." 51 *Am.Jur.2d* § 174 (2000). In *Burnett*, the Supreme Court explained that statutes of limitations have been tolled when "the plaintiff has not slept on his rights but, rather, has been prevented from asserting them." *Burnett*, 380 U.S. at 429, 85 S.Ct. 1050. The Ninth

Circuit equitably tolled a statute of limitations during the pendency of an appeal of an erroneous district court decision upholding a statute as constitutional, when defendants were on notice of the claims and not prejudiced by the tolling. *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 596 (9th Cir.1991) ("Courts have held that when external forces, rather than plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper."). The Fourth Circuit endorsed tolling under this type of circumstance in *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000) (permitting equitable tolling in rare instances where, "due to circumstances external to the party's own conduct," enforcement of the limitation period would lead to an unconscionable and unjust result) and in *Nealon v. Stone*, 958 F.2d 584, 592–93 (4th Cir.1992) (an apparently favorable, but erroneously issued, agency decision issued during limitations period tolled plaintiff's claim).[8]

### 2. Equitable Tolling Due to Defective Pleadings or Misconduct by A Defendant

Second, statutes of limitations have been tolled where "the plaintiff actively pursued his or her judicial remedies by filing a defective pleading during the statutory period or the claimant has been induced or tricked by the defendant's misconduct into allowing the filing deadline to pass." 51 *Am.Jur.2d* § 174 (2000). *Burnett* is an example of the former scenario. The petitioner "did not sleep on his rights but brought an action within the statutory period in the state court of competent

---

8. War is another example of an extraordinary circumstance beyond the plaintiff's control that calls for equitable tolling. Statutes of limitations have been tolled "when war has prevented a plaintiff from bringing his suit, even though a defendant in such a case might not know of the plaintiff's disability and might believe that the statute of limitations renders him immune from suit." *Burnett*, 380 U.S. at 429, 85 S.Ct. 1050, citing *Osbourne v. United States*, 164 F.2d 767 (2nd Cir.1947) and *Frabutt v. New York, Chicago & St. Louis R. Co.*, 84 F.Supp. 460 (W.D.Pa.1949).

jurisdiction" and served the defendant, who had waived venue objections in the past. *Burnett*, 380 U.S. at 429, 85 S.Ct. 1050. "[A] prior timely action [was] dismissed for improper venue after the applicable statute of limitations ha[d] run," and the Supreme Court tolled the statute of limitations. *Burnett*, 380 U.S. at 430, 85 S.Ct. 1050. Tolling under these circumstances is appropriate because an action is "commenced" under a federal statute of limitations when process is served and the parties are put on notice, even if the action was initiated in a court that "itself is unable to proceed to judgment." *Herb v. Pitcairn*, 325 U.S. 77, 78–79, 65 S.Ct. 954, 89 L.Ed. 1483 (1945).

■ Following *Burnett*, the Sixth Circuit held that commencement of an action in state court tolled the statute of limitations, when at that time there was no controlling decision indicating that state court was an inappropriate forum, the plaintiff was diligent, and the defendant was not prejudiced. *Fox v. Eaton Corp.*, 615 F.2d 716 (6th Cir.1980). However, "commencement of an action in a clearly inappropriate forum, a court that clearly lacks jurisdiction, will not toll the statute of limitations." *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992).

### 3. Equitable Tolling For A Diligent Plaintiff Who Cannot Obtain Information

Third, statutes of limitations have been tolled where "the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his or her claim." 51 *Am.Jur.2d* § 174 (2000); *Cada*, 920 F.2d at 451. The Fourth Circuit has expressed a hybrid of tolling due to misconduct and tolling due to the plaintiff's inability to obtain information on the existence of a claim, permitting equitable tolling "only 'where the defendant has wrong-

fully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" *Kokotis v. United States Postal Service*, 223 F.3d 275, 280–81 (4th Cir. 2000), citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987); *see also Bowen v. City of New York*, 476 U.S. 467, 481, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

### 4. Misconduct by a Defendant is Not Required for the Application of Equitable Tolling

Equitable tolling does not require misconduct on the part of the defendant. 51 *Am.Jur.2d* § 174 (2000); *Browning v. AT & T Paradyne*, 120 F.3d 222, 226 (11th Cir.1997); *Bell v. Fowler*, 99 F.3d 262, 266 n. 2 (8th Cir.1996); *Cada*, 920 F.2d at 451; *Fox*, 615 F.2d at 719; *see also Baldwin Co. Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (listing circumstances in which equitable tolling may be appropriate). For example, in *Burnett*, the Supreme Court equitably tolled a statute of limitations where the plaintiff did not sleep on his rights, even though there was no misconduct by the defendant. The requirements for equitable tolling outlined in *Irwin*, 498 U.S. at 96, 111 S.Ct. 453, do not require misconduct by the defendant, although misconduct by the defendant may support the application of equitable tolling.

Some Fourth Circuit precedent suggests that misconduct by a defendant is necessary for a plaintiff to invoke equitable tolling. However, that line of reasoning originated before the Supreme Court's decision in *Irwin*. *See English*, 828 F.2d at 1050 ("the nature of equitable tolling ... is based on the wrongdoing of the defendant"). In *English*, the Fourth Circuit explained the difference between equitable tolling and equitable estoppel, requiring

misconduct by the defendant for the application of both doctrines:

> Equitable tolling applies where the defendant has *wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action* ... To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.
>
> Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in *intentional misconduct to cause the plaintiff to miss the filing deadline.*

*English,* 828 F.2d at 1049 (citations omitted) (emphasis added). In 1990, the Fourth Circuit reiterated the position that equitable tolling requires deception by a defendant, stating that "[e]quitable tolling always has the potential of becoming the exception that swallows up the congressional rule." *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir.1990).

The Fourth Circuit has continued to cite *English* and *Olson* with approval after the Supreme Court's ruling in *Irwin. See, e.g., Kokotis,* 223 F.3d at 280–81. In an unpublished decision in 1993, the Fourth Circuit recognized, but did not decide, the question that arose after *Irwin:* whether *Irwin* "requires us to broaden the scope of factors that we consider with regard to equitable relief." *Hinton v. Cheney,* 9 F.3d 1543, 1993 WL 460651, *4 (4th Cir. 1993). The following year in *Weick v. O'Keefe,* 26 F.3d 467 (4th Cir.1994), the Court of Appeals noted that *Irwin* drew a distinction between plaintiffs who have been tricked and those who failed to exercise diligence. In *Weick,* the plaintiff exercised diligence and was also deceived by the defendant, and it was not necessary to resolve the issue raised in *Hinton.*

Following *Irwin* and *Hinton,* some Fourth Circuit cases addressing equitable tolling continued to suggest that misconduct by a defendant is necessary for a plaintiff to invoke equitable tolling. For example, the Fourth Circuit held that "because of the importance of respecting limitations periods, equitable tolling is appropriate only 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" *Kokotis,* 223 F.3d at 280–81, citing *English,* 828 F.2d at 1049.

In apparent contrast to *Kokotis,* the Fourth Circuit also recently explained:

> [t]he doctrine [of equitable tolling] has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of·wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time."

*Harris,* 209 F.3d at 331 (citation omitted). In *Harris,* the Fourth Circuit explained "that any resort to equity must be reserved for those rare instances where— *due to circumstances external to the party's own conduct*—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* (emphasis added); *see also United States v. Prescott,* 221 F.3d 686, 688 (4th Cir.2000). The equitable tolling doctrine set out in *Harris* requires something beyond the plaintiff's control, but not necessarily misconduct by a defendant.

▪ *Kokotis* and *Harris* can be reconciled with each other and with *Irwin* by understanding Fourth Circuit precedent on the doctrine of equitable tolling to require misconduct by a defendant *only* when the plaintiff has not been diligent in pursuing claims, to excuse the plaintiff's

lack of diligence. If the plaintiff has been diligent, however, such as by filing a defective pleading, then misconduct by a defendant is not necessary for the application of equitable tolling. *See Irwin*, 498 U.S. at 96, 111 S.Ct. 453; *Baldwin Co. Welcome Ctr.*, 466 U.S. at 151, 104 S.Ct. 1723 ("[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence[,]" but recognizing that "affirmative misconduct on the part of a defendant [that] lulled the plaintiff into inaction" may justify equitable tolling).

This interpretation is consistent with the Fourth Circuit's decisions in *Kokotis, Harris* and *Muth v. United States*, 1 F.3d 246, 251 (4th Cir.1993), all cases in which the plaintiff was not diligent and the defendant did not deceive or mislead the plaintiff.[9] In *Muth*, the "plaintiff did not exercise due diligence by actively investigating the basis for his claim," despite knowledge of facts suggesting the basis for a claim. *Muth*, 1 F.3d at 251. The lack of diligence by a plaintiff with knowledge indicating a claim, and no reliance on misrepresentation by the defendant, meant that the plaintiff had "no right to invoke the equitable powers of the court." *Id.* This interpretation is also consistent with *Nealon*, 958 F.2d at 592–93, in which an apparently favorable, but erroneously issued, agency decision tolled the plaintiff's claim, even absent allegations of misrepresentation by the defendant.

## B. The FLSA is Subject to Equitable Tolling

■■■■■ Of course, the FLSA need not state explicitly that its limitations provision is subject to equitable tolling in order that the doctrine may apply. That is because the doctrine of equitable tolling "is

read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *see also CNA Financial Corp. v. Brown*, 162 F.3d 1334, 1336 (11th Cir.1998). However, equitable tolling does not apply to limitations that are jurisdictional in nature or to statutes of repose. *Harris*, 209 F.3d at 328; *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3rd Cir.1998); *Cada*, 920 F.2d at 451. The provision at issue, 29 U.S.C. § 255, is a statute of limitations. *Hodgson v. Humphries*, 454 F.2d 1279, 1283–84 (10th Cir.1972). 29 U.S.C. § 255 is entitled "Statute of limitations" and is not jurisdictional in nature; 29 U.S.C. § 217 contains the jurisdictional grant in the FLSA. VDOT does not argue that the FLSA is not subject to tolling.

## C. Equitable Tolling Applies to Claims Against A State

■■■■■ Citing a passage from *Webb v. United States*, 66 F.3d 691 (4th Cir.1995), VDOT argues that equitable tolling does not apply to sovereign states. However, in what the Court assumes is a mere oversight, VDOT failed to put in context the Fourth Circuit's statement in *Webb* that "courts have traditionally declined to permit equitable considerations to toll statutes of limitations in cases against the United States." *Webb*, 66 F.3d at 694. That quotation was qualified with the statement "[i]f this case had arisen prior to 1990, there would seemingly be no question that the district court's holding [that provisions of the Internal Revenue Code governing tax refund claims are not subject to equitable tolling] was correct." *Id.* As *Webb* later explained, in *Irwin* in 1990, the Supreme Court held that "the same rebuttable presumption of equitable tolling appli-

---

**9.** To construe these decisions differently would be to find that the Fourth Circuit has disregarded the express rule of the Supreme

Court in *Irwin*, a finding that a district court must eschew at all reasonable cost.

cable to suits against private defendants should also apply to suits against the United States." *Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453. In other words, the portion of *Webb* on which VDOT relies described the law before 1990 when *Irwin* was decided. The Supreme Court also has declined to hold that equitable tolling is applicable only in actions that do not directly affect the public treasury; rather, the Court held, "[w]hen application of the doctrine [of equitable tolling] is consistent with Congress' intent in enacting a particular statutory scheme, there is no justification for limiting the doctrine to cases that do not involve monetary relief." *Bowen v. City of New York*, 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). VDOT has not cited any other authority for its argument that equitable tolling should not apply to states and has not made any argument for why equitable tolling should not apply to actions against states if it does apply to actions against the United States. Accordingly, VDOT's argument that equitable tolling cannot be invoked against a state fails.

## D. Equitable Tolling Applies to This Action

■ In determining whether to apply equitable tolling, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett*, 380 U.S. at 427, 85 S.Ct. 1050. In determining congressional intent, a court "examine[s] the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Id.*

## 1. The Purposes and Policies Underlying the Limitation Provision

■ The first step of the inquiry is an examination of the purposes and policies underlying the limitations provision. As *Burnett* explains, statutes of limitations protect defendants by preventing surprises and preserving evidence. *Burnett*, 380 U.S. at 428, 85 S.Ct. 1050. Limitations provisions also relieve the courts "of the burden of trying stale claims when a plaintiff has slept on his rights." *Id.*

■ The limitations provision at issue here was not part of the FLSA as enacted in 1938, but was enacted in the Portal–to–Portal Act in 1947. *Hodgson*, 454 F.2d at 1284. The "express purpose" of the limitations period in the FLSA "was to substitute a uniform federal limitations period for the diverse periods provided under statutes of the several States." *Id.*, citing 29 U.S.C. § 251. The limitation was also "intended to curtail the numerous suits for unpaid compensation and liquidated damages under the FLSA that were filed after [the Supreme] Court's decision in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)." [10] *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 780, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981), citing *Unexcelled Chem. Corp. v. United States*, 345 U.S. 59, 61, 73 S.Ct. 580, 97 L.Ed. 821 (1953).

This action certainly is no surprise to VDOT. Indeed, VDOT has been on notice of the claims asserted by the Secretary in this action since December 22, 1995, when inspectors filed *Taylor, et al. v. Commonwealth of Virginia, Department of Transportation*, 3:95cv1026, in this Court. The purpose of statutes of limitations in general, to prevent unfair surprise, and of section 255 in particular, to curb suits after

---

**10.** *Anderson* held that "time necessarily spent by the employees in walking to work on the employer's premises … was working time …" *Anderson*, 328 U.S. at 691, 66 S.Ct. 1187.

*Anderson,* are not offended by tolling the limitations period in this action.

The inspectors and the Secretary have been diligent and have not slept on their rights, as statutes of limitations are intended to ensure. Inspectors timely filed a complaint in federal court on December 22, 1995, three years after the date of the first alleged violation. When the inspectors filed their complaint in federal court, there was no binding authority to indicate that this Court did not have jurisdiction over the action. When it became apparent that this Court would dismiss the federal action, but even before it had done so, the inspectors filed a complaint in the Circuit Court of the City of Richmond. At that time, there was no authority to indicate that the Circuit Court did not have jurisdiction. The inspectors diligently pursued their rights, but were prevented from achieving a final resolution of both actions by rulings of the Supreme Court of the United States and the Supreme Court of Virginia.

When this Court dismissed the *Taylor* action, the Secretary acted under the good-faith belief that the inspectors had a remedy in state court after *Seminole Tribe. See* Def.'s Ex. L, Brief of the United States Department of Labor Regarding *Seminole Tribe of Florida v. Florida,* at 45, 116 S.Ct. 1114. When it became apparent that the Secretary would have to intervene in *Griffin* in the Circuit Court for the City of Richmond in order for the claims initiated by the inspectors to be heard on the merits, the Secretary filed a motion to do so. VDOT opposed that motion and prevented the Secretary's intervention in *Griffin.* The Secretary filed the Complaint in this action on July 18, 2000, just two months and one week after the Circuit Court for the City of Richmond dismissed the *Griffin* action.

In its Further Memorandum in Support of its Motion for Summary Judgment, VDOT made a conclusory allegation of prejudice. VDOT argues that it is prejudiced because, in discovery responses, inspectors could not recall important details related to this action. However, VDOT has not produced any documentation of the loss of evidence to the Court or explained how the loss of memory prejudices VDOT's ability to defend itself. In this Motion for Summary Judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant. *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). VDOT has not met this burden of showing that it was prejudiced and is entitled to judgment as a matter of law.

## 2. The Statute at Issue

The second step of the inquiry required by *Burnett* is an examination of the statute at issue. As noted above, the FLSA is a humane and remedial statute intended "to protect certain groups of the population from substandard wages and excessive hours which endanger the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank,* 324 U.S. at 706–07, 65 S.Ct. 895, citing H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21 and 28. In actions involving the FLSA:

[w]e are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specifically legislated to pro-

tect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Tennessee Coal, Iron & R. Co.,* 321 U.S. at 597, 64 S.Ct. 698; *see also Benshoff v. City of Virginia Beach,* 180 F.3d 136, 140 (4th Cir.1999). The rights that the Secretary seeks to protect are precisely those the FLSA was enacted to protect. As explained extensively in Section IB, *supra,* this action serves both public and private interests, which would be furthered by equitably tolling the statute of limitations. As in *Bowen v. City of New York,* equitable tolling is appropriate here because tolling "is fully 'consistent with the overall congressional purpose' and is 'nowhere eschewed by Congress.'" *Bowen v. City of New York,* 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (applying equitable tolling to the Social Security Act which was "designed to be 'unusually protective' of claimants").

### 3. The Remedial Scheme for the Enforcement of the Rights Given By the Act

The final step of the inquiry is an examination of the remedial scheme developed for the enforcement of the rights given by the Act. The FLSA contains multiple methods of enforcement. First, willful violation of the FLSA can be a criminal offense punishable by a fine or, in the case of a second or subsequent conviction, imprisonment. 29 U.S.C. § 216(a). Second, under 29 U.S.C. § 216(b), employees can bring suits for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and legal or equitable relief appropriate to effectuate the purposes of section 215(a)(3), which prohibits retaliatory discharge. 29 U.S.C. § 216(b) also permits an employee to bring an action for

and in behalf of other employees similarly situated.

Finally, the Secretary can bring an action under 29 U.S.C. § 216(c) or 29 U.S.C. § 217. Under section 216(c), the Secretary "may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." The filing of a complaint by the Secretary under section 216(c) to recover unpaid minimum wages, unpaid overtime compensation or liquidated damages terminates the rights of an employee to sue to recover those sums under section 216(b). *See* 29 U.S.C. § 216(c).

Under section 217, under which the Secretary has brought this action, the Secretary can bring actions to restrain violations of 29 U.S.C. § 215.[11] The filing of a complaint by the Secretary under section 217 for the restraint of delay in payment of unpaid minimum wages, unpaid overtime compensation, liquidated damages or for legal or equitable relief for violations of section 215(a)(3) terminates the right to bring an action by or in behalf of an employee or to become a party plaintiff in an action under section 216(b). *See* 29 U.S.C. § 216(b).

Because of these provisions in the remedial scheme and the purposes of statutes of limitations, the Secretary can benefit from the actions that the inspectors filed in courts which had jurisdiction at the time the inspectors' complaints were filed but, for reasons external to the conduct of the inspectors and the Secretary, were ultimately determined not to have jurisdiction. As in *Burnett,* tolling "effectuates the basic congressional purposes in enacting this

---

**11.** The Secretary alleges VDOT violated sections 207, 211(c), 215(a)(2), and 215(a)(5). 29 U.S.C. § 215(a)(2) makes unlawful the violation of section 207, and 29 U.S.C. § 215(a)(5) makes unlawful the violation of section 211(c).

humane and remedial Act, as well as those policies embodied in the Act's limitation provision." *Burnett*, 380 U.S. at 427–28, 85 S.Ct. 1050 (applying equitable tolling to action under the Federal Employers' Liability Act).

The Supreme Court has recognized that statutes of limitations can be tolled for non-parties to a previous action by defective pleadings filed in that previous action. In 1974, the Supreme Court held that the commencement of a class action tolled the statute of limitations "for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Amer. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The purposes of statutes of limitations, the Court reasoned, were not frustrated by this holding:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights' are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional interveners.

*Id.* at 554–55, 94 S.Ct. 756 (citations omitted). In 1983, the Court held that *American Pipe* "is not to be read so narrowly" as to apply only to interveners, and that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class.' " *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

In this case, the purposes of the statute of limitations were served by the filing of the action by the inspectors on December 22, 1995. The commencement of that action put VDOT on notice of the claims and the identities of the employees with such claims. VDOT has therefore been in a position to determine the subject matter and size of this litigation and has not said—and could not say—it was taken by surprise.

Particularly given the remedial scheme of the FLSA, which can be enforced through individual actions, class actions, and actions by the Secretary, tolling would be appropriate in this case. Moreover, the FLSA makes clear that both the Secretary and employees cannot file actions on the same violations; the filing of an action by the Secretary terminates the ability of employees to join an action. And in this action, the Secretary is pursuing only a subset of the claims included in the prior litigation. In this case, the policies underlying statutes of limitations, which are designed to protect defendants, are fulfilled and the interests of justice require tolling in order to vindicate the inspectors' rights and enforce the FLSA. *See Burnett*, 380 U.S. at 428, 85 S.Ct. 1050.

This case calls out for application of equitable tolling. The inspectors, whose work circumstances form the basis for the Secretary's action, pressed their claims assiduously in federal and state courts, at a time when the controlling law afforded jurisdiction in those courts, respectively, to entertain the claims. At each turn, the law underwent a significant change wrought by the Supreme Court. And, in each court, VDOT used that change in the basic legal precepts to fend off the claims.

When the Secretary attempted to intervene in the state proceedings, VDOT vigorously opposed the intervention. Then, on the heels of the unsuccessful intervention in the pending state proceedings, the Secretary initiated this action. This was no surprise to VDOT and it presents no prejudice to VDOT. Thus, the purposes of the statute of limitations would not be contravened by tolling the statute here. To the contrary, a failure to apply equitable tolling here would allow VDOT to frustrate the objectives of the FLSA merely because of changes in the law respecting who may press FLSA claims against state employers and where those claims may be pressed.

Never has VDOT been immune from the requirements of the FLSA which it is alleged to have violated. Never has VDOT enjoyed immunity from the federal government in the federal courts. Although VDOT was entitled to rely on the changes in the law to forestall enforcement by employees, it cannot now be permitted to assert that the time it used in the successful quest against those actions should be the basis to foreclose enforcement of a federal law by the federal government in the federal court.

For all the foregoing reasons, equitable tolling is available and applicable here.

### E. Record Keeping Violations Are Not Time Barred

■ In addition, in its Motion to Dismiss, VDOT argues that the record keeping violations are barred by the statute of limitations. The inspectors did not allege record keeping violations in their actions and, as private individuals, could not have done so. However, the statute of limitations set forth in 29 U.S.C. § 255 applies to actions for unpaid minimum wages, unpaid overtime compensation, and liquidated damages; it does not apply to actions regarding record keeping violations. Accordingly, the Motion to Dismiss the claim regarding record keeping violations is denied.

### F. Res Judicata

■ VDOT makes a brief argument that the Secretary's claims are barred by res judicata due to the state court's jury trial on the claims of 40 inspectors. Def.'s Motion for Summary Judgment at 8. "Res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991). To prevail on res judicata, VDOT must establish the following: (1) that there was a final judgment on the merits in the prior action; (2) an identity of the cause of action in the prior and instant actions; and (3) an identity of the parties or their privies in the prior and instant actions. *Id.* The Fourth Circuit has "adopted a transactional approach to the identity of claims question—'the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir.1990).

There is no identity of claims between those asserted by the Secretary and those of the 40 inspectors tried in *Griffin* in the Circuit Court for the City of Richmond. Significantly, the Secretary's action involves the claims of a subset of those asserted in the state court because the Secretary interprets the law on compensable time more narrowly than some of the inspectors in the private action. The claims are fact-specific, as evidenced by the state court setting the claims of the inspectors for trial in groups. *See Meekins*, 946 F.2d at 1058, citing *Crowe v. Leeke*, 550 F.2d 184, 187 (4th Cir.1977) (" 'Res

judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to new cause of action.' ").

For these reasons, the claims asserted here are not barred by the principles of res judicata.

### Conclusion

For the foregoing reasons, the Motion to Dismiss and the Motion for Summary Judgment filed by VDOT are denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.